

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
November 9, 2020 04:44 PM
     AFTAB PUREVAL
    Clerk of Courts
  Hamilton County, Ohio
 CONFIRMATION 1004435
```

**DANIEL WALTERS**                                          **A 2003935**

**vs.**

**GENTHERM MEDICAL LLC**

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 13**

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DANIEL WALTERS<br>9011 Debbie Dr.<br>West Chester, OH 45069 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| GENTHERM MEDICAL, LLC<br>12011 Mosteller Rd.<br>Sharonville, OH 45241 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve also**:<br>Gentherm Medical, LLC<br>c/o Corp. Service Co. (Stat. Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| Gentherm Medical, LLC<br>Corporate HQ<br>21680 Haggerty Road<br>Northville, MI 48167 | )<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff Daniel Walters, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

### PARTIES, JURISDICTION, & VENUE

1. Walters is a resident of the city of West Chester, Butler County, state of Ohio.

2. Defendant GENTHERM MEDICAL, LLC ("Gentherm") is an Ohio-incorporated business that conducts business within the state. The events that give rise to the claims for relief in this Complaint occurred at Gentherm's location at 12011 Mosteller Rd., Sharonville, OH 45241.

3. Gentherm is, and was at all times hereinafter mentioned, Walters' employer within the meaning of Family First Coronavirus Response Act ("FFCRA") 29 U.S.C. § 2620 et seq., R.C. § 4112.01(A)(2), and R.C. § 4113.52.

4. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

5. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).

6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Walters is a former employee of Gentherm.

8. At all times noted herein, Walters was fully qualified for and could fully perform the essential functions of his job.

9. Walters worked for Gentherm as a medical department technician from October 8, 2019 until Gentherm terminated Walters' employment on or about May 22, 2020.

10. Walters is disabled due to his Hepatitis C diagnosis, of which Gentherm had notice from early on in his employment and/or from his application for hire, placing him in a protected class for disability. He was also perceived as disabled, discussed *infra*.

11. Walters initially came to Gentherm after an interview with Leila Elliot (plant supervisor) and an initial drug screen, which he passed.

12. Brandon (LNU, supervisor) reviewed Walters' benefits and pay package and Mitch (LNU, promoted to another site shortly before Walters' full start with Gentherm) helped Walters complete his benefits documents.

13. Walters saw a red flag quickly into his benefits review with Mitch (LNU).

2

14. Mitch (LNU) told Walters to elect not to get short-term disability leave as Gentherm terminated employees who went off on the leave within two weeks of their application.

15. Through the remainder of 2019 and into early 2020, Walters had few issues at work, only really having trouble with using his PTO and receiving holiday pay around the holidays.

16. In or around early February 2020, Walters came back late from a break. Brandon (LNU) approached him and told him to make sure he returned from break on time or else he could get in trouble.

17. Steve (LNU, medical department in hemostage 1 section) overheard Brandon (LNU)'s statement and began insulting Walters to himself, loud enough that Walters could hear the statements.

18. Not wanting to rock the boat, Walters stayed silent about the insults and got to work.

19. Later that day, Steve (LNU) was speaking with some of his work friends, Lowe (nickname, actual name unknown), Daya (nickname, actual name unknown), and Lakim (nickname, actual name unknown). Steve (LNU)'s was trying to get his friends angry at Walters too.

20. Walters, overhearing the comments about him, approached the group and tried to explain that Brandon (LNU) was just trying to ensure no one got in trouble for being late back to work. Steve (LNU) told Walters that he was about to "fuck it up" for everyone else.

21. Walters told him "not to be a dick" about the situation, then Steve (LNU) got in his face and aggressively told him not to speak to him. Steve (LNU) was threatening violence.

22. Walters laughed and walked away; he did not want to get into a fight at work.

23. Later, when talking to Brandon (LNU) about the situation, Brandon (LNU) mentioned to Walters that Steve (LNU) had a history of causing issues at work.

3

24. Walters, at Brandon (LNU)'s advice, then filed a written complaint/incident report with Elliot. This was a protected whistleblower complaint and complaint of unsafe working conditions caused by Steve (LNU).

25. By in or around late February/early March 2020, Walters had repeatedly followed up with Brandon (LNU) about his previous protected complaint.

26. Steve (LNU) was called into the office and after he came out, screamed across Gentherm complaining about "snitches."

27. A few days later, Steve (LNU) approached Walters and gave an insincere apology.

28. Walters, still wanting smooth sailing, accepted it and thought the situation was done.

29. As time progressed, Steve (LNU) increased tension around him at work and continued talking to his friends about how terrible Walters was for snitching.

30. Steve (LNU) even mentioned at one point that Walters was "nothing but a drug addict." This was false, and Walters did not appreciate the insult.

31. Walters reported the insult to Brandon (LNU) and later wrote another incident report about it. Notably, these were protected complaints of perceived disability discrimination – Steve (LNU) was insulting Walters for the perceived disability of drug addiction.

32. Shortly after, Walters received another write-up. Walters complained about this write-up, saying it was retaliatory against his previous complaints – this was a protected complaint of retaliation.

33. In or around March 2020, the COVID-19 pandemic hit the United States and Ohio issued a Stay-at-Home order for non-essential employees.

34. After, Walters began suffering coronavirus-like symptoms and gave notice to Gentherm.

4

35. Walters quarantined as required and was tested – both results were negative (the second test was in or around May 2020).

36. Walters suspected he was not positive with COVID-19, but that these were symptoms associated with his disability.

37. By early April 2020, Walters' symptoms had not subsided, so he was asked to quarantine an additional two weeks. Walters provided a doctor's note to Gentherm notifying the company of the same.

38. Walters had to visit the hospital on a few different occasions through this time period, his legs and ankles were swelling terribly, he suffered from repeated fevers, and he had trouble standing for long periods as a result.

39. In or around mid-May 2020, Walters reported his continued symptoms to Gentherm, but said he still intended to come into work despite them.

40. Brandon (LNU) told Walters he was not allowed to return to work with a fever, so Walters continued his quarantine.

41. Gentherm never provided information regarding paid FFCRA leave to Walters, irrespective of time period.

42. On or about May 13, 2020, Walters received his second negative COVID-19 test result and sent it to Gentherm but received no response.

43. Walters assumed that the company would tell him when to return, so he waited to hear back. This continued through the remainder of the week.

44. On or about May 18, 2020, Walters called into Gentherm asking when he was allowed to return to work – he left a voicemail.

5

45. On or about May 20, 2020, Walters finally heard back from Gentherm's HR department (Corey LNU, female).

46. Walters said he had sent in his work release but had not received any response.

47. Corey (LNU) denied this, saying that Elliot had texted Walters that same evening approving his return. This was false and Walters denied it.

48. After some more back and forth, Corey (LNU) said to chalk the situation up to a miscommunication and to return to work.

49. Walters agreed, then Corey (LNU) told him he was on probation due to his attendance.

50. Walters mentioned the repeated doctors' notes he had submitted to Gentherm, but Corey (LNU) said that his doctors' notes didn't really matter.

51. Walters denied seeing any agreeing policy in the employee handbook and denied he had heard anyone tell this to him.

52. Walters, still speaking on the employee handbook, then switched topics and asked about Gentherm's response to his protected complaints about Steve (LNU) as the handbook said harassment and discrimination were against Gentherm rules.

53. Corey (LNU) asked what Walters meant, and Walters reiterated his previous verbal and written complaints.

54. Corey (LNU) said she could not discuss the conversation between Gentherm and Steve (LNU), and Walters said he didn't care about the specific conversations, he wanted to know what the discipline would be.

55. Corey (LNU) said the company had handled it while Walters was out on leave.

56. Walters said he was upset that Gentherm was taking no remedial action despite his protected complaints. Notably, this conversation too was a protected action.

6

57. On or about May 24, 2020, Walters' employment was terminated citing his attendance.

58. Defendant's termination of Walters was an adverse employment action against him.

59. Defendant's purported reason for Walters' termination is pretextual.

60. Defendant actually terminated Walters' employment in retaliation for his protected whistleblower and/or workplace safety complaints, as well as discriminatorily against his actual and/or perceived disabilities and/or in retaliation against his complaints of discrimination.

61. As a result of Defendant's acts and omissions above, Walters has suffered damages.

## COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

62. Walters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

63. A clear public policy exists and is manifested in Ohio statutes, including R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on complaints of unsafe working conditions caused by violent employees.

64. As set forth above, Walters repeatedly made reports to Gentherm about the unethical, unlawful, and/or policy-violating behavior that was going on there, including unsafe working conditions caused by Steve (LNU).

65. Defendant's termination of Walters' employment jeopardizes these public policies.

66. Defendant's termination of Walters' employment was motivated by conduct related to these public policies.

67. Defendant had no overriding business justification for terminating Walters' employment.

68. As a direct and proximate result of Defendant's conduct, Walters suffered and will continue to suffer damages.

7

## COUNT II: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52

69. Walters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. As set forth above, Walters repeatedly made oral and written reports to Defendant about unethical, unlawful, and/or policy-violating behavior including threats of violence from a coworker.

71. Walters repeatedly and consistently reported to Defendant what he reasonably believed to be unethical and/or illegal conduct in the workplace in violation of the law and company policies.

72. In the alternative, Walters reasonably believed he was reporting unethical and/or illegal behavior, in violation of the law and company policies, that constituted criminal acts that threatened the public's health or safety.

73. Walters verbally complained to Defendant regarding this conduct.

74. Walters complained to Defendant in writing regarding this conduct.

75. Walters gave Defendant an opportunity to cure the reported misconduct.

76. Defendant retaliated against Walters by terminating his employment based on his complaints regarding this conduct.

77. Defendant's termination of Walters' employment was in violation of R.C. § 4113.52.

78. As a direct and proximate result of Defendant's conduct, Walters suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

79. Walters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

8

80. Due to his health issues described *supra*, Walters was disabled within the meaning of R.C. § 4112.02.

81. Gentherm was aware Walters was disabled under R.C. § 4112.02.

82. In the alternative, due to Walters' various health issues described herein, Gentherm perceived Walters as disabled under R.C. § 4112.02.

83. Walters' disabilities substantially impaired one or more major life activities under R.C. § 4112.02.

84. Despite his disabling conditions, Walters was still able to perform the essential functions of his job, with or without a reasonable accommodation.

85. R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

86. Gentherm terminated Walters' employment due to his actual or perceived disabilities.

87. Gentherm violated R.C. § 4112.02 by terminating Walters because of his actual and/or perceived disabilities.

88. As a direct and proximate cause of Defendant's conduct, Walters has suffered and will continue to suffer damages.

## COUNT IV: RETALIATION

89. Walters restates each and every prior paragraph of this complaint, as if it were fully restated herein.

90. During his employment, Walters complained of retaliation against his by removing job duties due to his disability. This was a protected complaint.

91. Within a few days of Walters' protected complaints, Defendant terminated his employment.

9

92. Defendant's actions were retaliatory in nature based on Walters' protected complaint.

93. Pursuant to R.C. § 4112.02 et seq., it is an unlawful discriminatory practice retaliate against those who make protected complaints of discrimination.

94. As a direct and proximate result of Defendant's acts and omissions, Walters has suffered and will continue to suffer damages.

### COUNT V: UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

95. Walters restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Pursuant to the FFCRA, covered employers are required to provide employees job-protected paid leave for qualified medical and family situations related to the COVID-19 pandemic.

97. Gentherm is a covered employer under the FFCRA.

98. Walters was an employee eligible for FFCRA due to his severe health conditions (described *supra*) and due to the duration of his employment.

99. Gentherm intentionally terminated Walters' employment before his use of protected FFCRA leave in order to interfere with his FFCRA rights.

100. During his employment with Gentherm, Walters was unable to receive FFCRA benefits because of Gentherm's interference with his FFCRA rights.

101. Defendant unlawfully interfered with Walters' exercise of his rights under the FFCRA in violation the FFCRA.

102. Defendant's refusal to provide Walters with information pertaining to FFCRA leave and/or permit Walters to take FFCRA leave violated and interfered with his FFCRA rights.

10

103. As a direct and proximate result of Defendant's conduct, Walters is entitled to all damages provided for in the FFCRA.

### DEMAND FOR RELIEF

WHEREFORE, Walters demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Walters for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Walters' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew G. Bruce
Matthew Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Daniel Walters*

## JURY DEMAND

Plaintiff Daniel Walters demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)

13